IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RICHARD K. REVELY,

                Plaintiff,

v.                                  CIVIL  ACTION  NO.  3:07-0648

CITY OF HUNTINGTON, a
municipal corporation, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion for Summary Judgment of Defendants Larry Parsons and V.L. Greene (Doc. 86). In this motion, Defendants Parsons and Greene argue that Plaintiff has not produced evidence against them sufficient to support claims of constitutional injury or intentional infliction of emotional distress. Even considering the evidence in the light most favorable to the Plaintiff, the Court must agree. The Court **GRANTS** the motion.

**Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**Background**

Plaintiff, Richard Revely, was arrested on the night of November 20, 2005. Following the arrest, Huntington Police Officer Darrell Booth transported Mr. Revely to the Western Regional Jail ("WRJ"). WRJ corrections officers committed Revely and detained him overnight.[1] The next morning he appeared before a magistrate by video for arraignment. Eventually all charges against him were dismissed.

Plaintiff alleges mistreatment during his detention. Though Parsons (administrator of the WRJ) and Greene (chief correctional officer) were not present during the alleged misconduct, Plaintiff seeks to hold them liable based on their supervisory roles. Some of the actions he complains of are undisputed. During the arrest, Sgt. Booth administered a chemical spray to subdue the Plaintiff; WRJ officers never cleaned this spray from Revely's face or eyes. Revely was originally placed in a plastic chair, but later removed to a restraint chair (either because the plastic chair broke, because he was being uncooperative, or both). He was held in this restraint chair for two hours and forty minutes. Other, egregious, allegations are disputed. Revely contends that he was prodded with a broom handle, in areas including his genitalia, and that he was subjected to

---

[1] In various motions, Plaintiff alleged that he was committed unlawfully. The Court has rejected these arguments. *See* Memorandum Opinion and Order of February 24, 2009 (Doc. 106).

insults after he revealed he was a preacher. These events all occurred (or allegedly occurred) in the booking room – where, undisputedly, there are no video cameras.

## Analysis

**I. Plaintiff Has Not Submitted Evidence Sufficient to Satisfy the Necessary Elements for Supervisory Liability under 42 U.S.C. § 1983**

In certain instances, supervisory officials may be held liable for constitutional injuries inflicted by their subordinates. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). This liability, however, is not premised on *respondeat superior*, but rather the recognition that "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (citing *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978)). In such a case, the plaintiff bears a heavy burden – to show that the supervisor's actions constituted "deliberate indifference or tacit authorization of the offensive practices." *Id.* at 373.

The Fourth Circuit Court of Appeals has set forth three elements necessary to establish supervisory liability under 42 U.S.C. § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted). Here, Plaintiff makes three arguments: 1) that Defendants knew about Revely's actual restraint, 2) that Defendants knew

about restraints of other inmates that exceeded a recommended two-hour limit, and 3) that Defendants knew there were no cameras in the booking room.

It is undisputed that neither Parsons nor Greene was present during Revely's restraint. Although they did learn of it afterward, their subsequent knowledge is not sufficient to hold them liable as supervisors. The first element of the *Shaw* test is not satisfied by knowledge of a "single isolated incident" or where a supervisor "has no basis to anticipate the misconduct." *Slakan,* 737 F.2d at 373. Rather, a plaintiff must establish "a pervasive and unreasonable risk of constitutional injury" by submitting evidence of misconduct that is "widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799.

Evidence of widespread misuse of the restraint chair could be the kind of misconduct necessary to meet the *Shaw* test. Here, however, there is no documentation of widespread misuse. The only evidence Plaintiff provides is that officers sometimes restrained inmates for more than two hours. A policy statement of the WV Regional Jail and Correctional Facility Authority ("WVRJCFA"), cited by Plaintiff, states,

> When it is necessary (for the safety of the inmate) to restrain an inmate for longer than two (2) hours, staff shall utilize only medically approved restraining devices. . . . Correctional staff shall check the inmate every fifteen (15) minutes and the medical staff shall monitor the inmate every thirty (30) minutes to ensure that the restraints are not hampering circulation and to determine the general well being of the inmate. . . . Provisions will be made to allow for normal bodily functions.

Policy and Procedure Statement 9031-B, May 15, 1997, Doc. 104, Exh A at 2. Clearly, the WVRJCFA anticipates the restraint of inmates longer than two hours. There is no evidence that their procedures were abused or that the procedures themselves can be linked to any injury.

Plaintiff's final arguments are that there are no cameras in the booking room and that his own restraint was not videotaped. He cites a statement by Defendants' own expert, that "40 percent of detainee resistance and detainee assaults against officers occur in the booking area during the admission process." Preliminary Opinions Report of Darrell L. Ross, Ph.D., Doc. 98 Exh. 2A. He also cites a WVRJCFA Policy, which directs officers to videotape significant events – including use of force and disruptive inmate behavior. Again, however, Plaintiff has failed to establish a link between any kind of relevant knowledge, indifference or authorization of misconduct, and a constitutional injury. The statement by Defendants' expert is taken out of context. It is general in nature, saying nothing about particular practices or occurrences at the WRJ, and refers to misconduct by detainees rather than misconduct by officers. Parsons and Greene could not have realized the failure to videotape Revely until after the incident; the lack of fixed cameras in the booking room does not establish widespread misconduct based on the failure to use video. For these reasons, the Court **FINDS** that Defendants Parsons and Greene cannot be held liable for § 1983 violations as a result of their supervisory roles.

## II.     Plaintiff Provided No Evidence in Support of His State Law Tort Claims

Plaintiff's First Amended Complaint names Defendants Parsons and Greene in Count Four – Intentional Infliction of Emotional Distress. In West Virginia, a plaintiff must prove the following elements to succeed on a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs.*, 504 S.E.2d 419 (W.Va. 1998). Here, Plaintiff can make no such showing against Parsons and Greene. These particular Defendants were not present during Revely's restraint; they did not learn of it until after the fact. As a result, they could not have inflicted emotional distress directly. Neither did these Defendants intentionally inflict emotional distress through their actions as supervisors. As already explained, there is no evidence of widespread misconduct on the part of their subordinates. For these reasons any claim for intentional infliction of emotional distress against Parsons and Greene must fail.[2]

### Conclusion

Plaintiff has failed to provide evidence to support his claims against Defendants Parsons and Greene. For the reasons explained above, the Motion for Summary Judgment of Defendants Larry Parsons and V.L. Greene (Doc. 86) is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 26, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[2]In Plaintiff's response he argues that discovery against the WRJ Defendants has not closed and that after receiving all discovery he will amend his compliant to conform the evidence. This argument is closely related to those rejected by this Court in it February 24, 2009 Memorandum Opinion and Order, denying several of Plaintiff's motions. *See* Doc. 106. As explained therein, any late disclosure of information by the WRJ Defendants was harmless. The Court refuses to reopen discovery and has denied Plaintiff's motion to amend. *Id.*