IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RICHARD K. REVELY,

                Plaintiff,

v.                                        CIVIL ACTION NO. 3:07-0648

CITY OF HUNTINGTON, a
municipal corporation, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court is Defendants', City of Huntington, Huntington Police Department, and Sgt. D. Booth, Motion for Summary Judgment (Doc. 100). For the reasons explained below, the motion is **GRANTED**. Plaintiff's own rendition of the facts, as recounted during his deposition testimony, do not support the alleged constitutional violations by Booth, the city, or the police department.

**Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**Background**

Plaintiff, Richard Revely, and Defendant Booth, recounted markedly different versions of the facts during their respective depositions. Because of the posture of this case, the Court must accept Plaintiff's version of the facts and give him the benefit of every inference. The facts as recited by the Court are the version given by Plaintiff, taken from his own testimony.

Richard Revely works part-time as a preacher and is regularly employed by a janitorial company, which services businesses in the Huntington, West Virginia area. On Sunday, November 20, 2005, around 10:45 p.m., he left home for a night-shift assignment. Revely pulled out of his driveway, located at 121 Ninth Avenue in Huntington, and stopped short of the first stop sign along his route – the intersection of Ninth Avenue and Second Street. While stopped, he adjusted his CD player and then proceeded through the stop sign without braking a second time. As Revely crossed the intersection, he noticed a marked police cruiser proceeding north, in his direction, along Second Street.

Revely was driving his wife's 1997 Oldsmobile Aurora, a vehicle with Michigan plates. Revely suspected the officer might follow him because of the Michigan license plates. (He had heard that Huntington police officers viewed Detroit as a supply center for the local drug trade, and

Revely had been pulled over because of the plates before.)  Revely's suspicions proved correct and the cruiser, driven by Defendant Booth, turned to follow him.  At first the cruiser did not turn on its flashing lights or siren, but simply pulled up behind Revely's car.  To determine if the officer was really following him, Revely turned into an alley between Tenth and Eleventh Ave; Sgt Booth followed.  Revely then made a series of right hand turns, through streets and alleys, which brought him back near the original intersection of Ninth Avenue and Second Street.  Around fifty yards from his home, just prior to this original intersection, Booth turned on his flashing lights.  Revely stopped at this intersection, made a turn, and then proceeded to his own driveway, two houses from the intersection.

In Revely's driveway both he and Sgt. Booth exited their vehicles.  After opening his car door, Revely "pivoted" towards Booth and saw that the sergeant had drawn his firearm.  Revely was holding his keys in his right hand and moved to put them in his pocket.  Because he was nervous, he fidgeted with his hand in his pocket.  Revely testified that he had one hand in the air at all times and both hands after he let go of his keys.  Revely questioned the officer about the situation and, according to his deposition testimony, was subject to harsh verbal retorts.[1]  Revely, who is black, threatened to call Booth's supervisor and report him for racial profiling.

As Revely described the situation, he began moving slowly towards the officer with his hands raised (except for the period when he fidgeted with his keys).  As he came near the end of his vehicle, the officer approached him.  Booth abruptly ended the situation by charging at Revely and spraying Capstun, a mace-like substance, into Revely's face from approximately two feet away.

---

[1] According to Revely, Booth told him to "shut the f--- up" and called him a "dumb motherf---er."  Booth's account differs markedly.  He says that Revely was the one using harsh language and that he even taunted Sgt. Booth to shoot.

Booth then kicked Revely in the back, bringing Plaintiff to his knees.  Finally, Booth stepped on Revely's back, to place him prostrate, and put him in handcuffs.  Revely did not physically resist.

After taking Revely into custody Booth briefly detained him at the Huntington Police Department holding area.  Revely started praying and began rocking – hitting his head against the wall.  He explained that he was confused, frustrated, and "really agitated – very, very, agitated."  Dep. of Richard Revely at 157.  He admits that he was hitting his head against the wall, "nothing to hurt my head, but I was definitely hitting the wall."  *Id.*  Officers handcuffed him to a bar to restrain his movement.  Revely also testified that someone, who sounded like Booth, joked to another individual that Revely was a Jim Jones type preacher.[2]  After booking at the Huntington Police Department, Booth delivered Revely to the Western Regional Jail, where he spent the rest of the night.  Revely was released the next day; all charges were eventually dropped.

## Analysis

Revely's complaint states multiple counts against Sgt. Booth, the City of Huntington, and the Huntington Police Department.  First, Plaintiff claims use of excessive force in violation of the Fourth Amendment to the United States Constitution.  Second, he alleges violations of the Eighth Amendment to the United States Constitution for cruel and unusual punishment.  Third, he alleges deprivation of due process pursuant to the Fourteenth Amendment to the United States Constitution.  Fourth, and finally, Plaintiff asserts that Booth infringed upon Plaintiff's First Amendment rights to speak freely and practice his religion.  Defendant Booth requests summary judgment on each count, based on both substantive law and qualified immunity.  Defendants City of Huntington and

---

[2] Jim Jones was cult leader who famously convinced his followers to drink cyanide-laced Kool-Aid in mass suicide.

Huntington Police Department request summary judgment on grounds that Booth committed no federal violation for which they could be held responsible and, independently, because there is no basis for municipal liability.

For many years an evaluation of qualified immunity required a mandatory two-step analysis: first, the court was to determine whether the facts demonstrated a constitutional violation; if so, the court next decided whether constitutional law was clearly established at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194 (2001). Recently, the U.S. Supreme Court held that this approach was no longer mandatory. *Pearson v. Callahan,* 129 S.Ct. 808 (2009). While recognizing that the two-step approach would remain useful in some circumstances, the Court explained that "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id* at 820. After *Pearson*, to find for a defendant asserting qualified immunity a court may determine either that the facts taken in the light most favorable to the plaintiff do not demonstrate a constitutional violation or that the law was not clearly established.

The *Pearson* Court also took time to point out the special nature of qualified immunity. It is "an immunity from suit rather than a mere defense to liability. . . it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Court then went on to stress "the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Here, Defendant Booth is entitled to qualified immunity, and avoidance of trial, on each count alleged against him. The facts on the record are insufficient to demonstrate a constitutional

violation. Because there were no constitutional violations, claims against the City of Huntington and Huntington Police Department also fail.

**I.     Plaintiff Cannot Demonstrate that Sgt. Booth Used an Unreasonable Amount of Force Against Him.**

The Fourth Amendment guarantees citizens the right to be free from unreasonable seizures. U.S. Const. amend. IV. Encompassed within guarantee is the prohibition on use of excessive force by law enforcement officers. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Force is considered excessive when it exceeds the bounds of "objective reasonableness." *Id.* (quoting *Graham v. O'Connor*, 490 U.S. 386, 399 (1989)). When reviewing a claim of excessive force a court must consider whether the force would have been reasonable based on the perspective of an officer on the scene, rather than with the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*

Evaluation of an excessive force claim "requires careful attention to the facts and circumstances of each particular case." *Jones*, 325 F.3d at 527 (quoting *Graham*, 490 U.S. at 396). The nature and quality of the intrusion on the individual's Fourth Amendment rights must be weighed against the countervailing government interest at stake. *Id.* (quoting *Graham*, 490 U.S. at 396). Of course, on summary judgment, the facts must still be viewed in the light most favorable to the plaintiff and inferences made in his favor. *Matsushita Elec. Indus. Co., Ltd.* 475 U.S 574.

Facts and circumstances to be evaluated include: 1) "the severity of the crime at issue;" 2) whether the "suspect poses an immediate threat to the safety of the officers or others;" and, 3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Jones*, 325

F.3d at 527 (quoting *Graham* 490 U.S. at 396). "The extent of the plaintiff's injury is also a relevant consideration." *Id.* (citing *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). The ultimate question is whether the totality of the circumstances justify the type of seizure effectuated by the officer. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

After considering the relevant factors, and the situation as it must have appeared to the officer in the field, the Court finds that the force used by Sgt. Booth was not objectively unreasonable. The Court must not consider facts in isolation but must review the situation in its totality. When evaluated this way, the Court must conclude that Defendants are entitled to qualified immunity.[3]

The significant facts in this case led Booth to reasonably believe that Revely was a threat and/or likely to flee arrest. First, even before Booth turned on his lights, Revely's series of right-hand turns and alley-way driving was suspicious. After Revely saw the police lights, a clear indication he was to pull over, he proceeded through an intersection and pulled into a driveway. It is important to note that there was no ostensible connection between Revely's vehicle and the house where he pulled over. Booth had to consider the safety of the neighborhood residents. Any perceived threat to public safety, and the officer's own, was exacerbated when Revely made the ill-considered move to exit his vehicle. Whether he intended to or not, Revely put himself in direct

---

[3] Although the crime was not severe, Revely admitted that he failed to stop parallel to the stop sign. Even on his own version of the facts he stopped at least five feet short, paused to adjust his CD's and then proceeded through the stop sign without again coming to a stop. This constituted a traffic violation. Further, Plaintiff's failure to stop in recognition of the officer's use of his flashing lights provided additional justification for the arrest. Although the crime was minor, it gave Booth the right to arrest Revely. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")

confrontation with the officer. Because the police cruiser was blocking the entrance to the driveway, exit from the vehicle would also have been the first step to flight from arrest, on foot. Revely worsened the situation for himself when he fidgeted with one hand in his pocket and advanced towards the officer; there was no way for Booth to be sure that Plaintiff was fumbling with his keys and not with a weapon. (Although he may not have advanced far, it is not disputed that Revely moved towards the Booth during the confrontation.) These actions might not have been reasonably perceived as threatening in isolation, but connected with Revely's suspicious driving and taken while Booth had a firearm drawn, they would have been unsettling to the officer. Booth elected to use firm, but non-deadly, force to take down the suspect and neutralize the perceived threat and flight risk. This was not an unreasonable response to the situation as it must have appeared.

Under precedent set by the Fourth Circuit Court of Appeals, the Court should also consider the extent of Plaintiff's injury. *See Rowland,* 41 F.3d 167. Although he suffered temporary pain and discomfort from the takedown and the application of Capstun, Revely has not presented evidence of long-lasting or permanent injury. The extent of his injury does not demonstrate the use of unreasonable force.[4] Considering the events as they must have appeared to Sgt. Booth, the decision

---

[4] The Fourth Circuit Court of Appeals has most frequently referenced the severity of the injury factor to justify recovery when a serious injury results from arrest for a minor crime. *See Rowland,* 41 F.3d 167; *Jones,* 325 F.3d 520 (4th Cir. 2003). The incident at issue in *Rowland* began when an officer observed a woman drop a five-dollar bill and the plaintiff pocketed the bill without first offering to return it. *Id.* at 171-72. It ended after the officer used a wrestling move to take down the plaintiff, tearing Rowland's anterior cruciate ligament and permanently injuring him in the process. *Id* at 173-74. The Court explained, "[w]hen all the factors are considered *in toto,* it is impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill." *Id.* at 174. The plaintiff in *Jones* had committed no crime, but only turned himself over to police so he could sober up for a court appearance the next day. *Jones*, 325 F.3d at 523-24. In detention he became agitated and argumentative after officers handcuffed him. *Id.* He was knocked to the ground, suffered multiple facial fractures and bruised ribs. *Id.* at 524-525. The injury suffered
(continued...)

to subdue the plaintiff with Capstun and takedown maneuver was not unreasonable. His actions did not violate the Fourth Amendment.

## II.     The Eighth and Fourteenth Amendment Are Inapplicable to the Facts.

Plaintiff concedes that the Fourteenth Amendment claims are surplussage and that the Eighth Amendment is inapplicable. The Supreme Court has held that excessive force claims brought against law enforcement officers should be analyzed under the Fourth Amendment reasonableness standards. *Graham*, 490 U.S. at 394-95. The Fourteenth Amendment is the source off analysis when pretrial detainees are subjected to excessive force as a means of punishment. *Id.* at 395 n. 10; *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979). (Although Plaintiff has alleged mistreatment at Western Regional Jail and the Huntington Police Department holding area, he has not alleged facts sufficient to hold these Defendants liable under the Fourteenth Amendment.) The Eighth Amendment controls if the claimant alleges excessive force after conviction. *See City of Revere v. Massachusetts Gen. Hosp.* 463 U.S. 239, 243-244 (1983) ("The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.") (internal citations omitted).

## III.    Plaintiff Has Not Demonstrated Sgt. Booth Violated His First Amendment Rights.

Plaintiff offers two arguments in support of his First Amendment claims. First, he claims that Booth arrested him for his criticism of the officers actions and his threat to call the chief of

---

[4](...continued)
by Revely is not in the same category as the injuries suffered by plaintiffs Rowland or Jones and is not indicative of unreasonable force. Also, while the traffic violation (running the stop sign) was a minor offense, Plaintiff's conduct from that point on raised substantial suspicion and justified the use of force. Thus, the fact that the crime that initiated the encounter was minor has little relevance here.

police. He cites *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462 (1987) in support of this argument. Plaintiff also claims that he was denied the right to freely exercise his religion. Officer Booth restrained him at the Huntington Police Department holding area after he began to pray loudly and rock back and forth. Someone who sounded like Booth made fun of Revely for being a preacher.

Officer Booth's arrest of Revely did not infringe upon Revely's right to free speech. When a police officer makes an arrest, the reasonableness of that arrest is based upon objective factors; the officer's subjective intent does not factor into the analysis. *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004) ("Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer."). As Plaintiff correctly points out, the First Amendment does protect a citizen's right to criticize a police officer. *City of Houston*, 482 U.S. 451. An arrest supported by probable cause, however, does not become unlawful merely because the suspect questions or criticizes the officer. If probable cause exists, an argument that an arrestee's speech rather than the criminal conduct was the motivation for the arrest must fail. *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). Officer Booth had probable cause to arrest Revely (even if for a minor crime). The fact that Revely questioned the officer is not enough, under the circumstances, to support a First Amendment claim.

The officers' shackling of Revely at the holding area and making him the butt of a joke do not support a claim under the First Amendment either. Revely has not demonstrated any substantial burden imposed upon his ability to freely exercise his beliefs. To violate constitutional protections, a burden on the exercise of religion must put substantial pressure on the adherent, forcing him to "modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 718 (1981). The effect of shackling Revely was to prevent him from rocking

and striking his head against the wall. It was a reasonable response to Revely's behavior and furthered the government's interest in protecting Revely from bodily harm. There is no evidence that the shackles prevented him from praying or that rocking during prayer was part of his religious beliefs. The disparaging remarks overheard by Revely and attributed to Booth were certainly inappropriate; they do not, however rise to the level of a constitutional violation. There is no evidence they had any impact whatsoever on Revely's religious practice. Without the imposition of some burden there can be no constitutional violation.

### IV. Without an Underlying Constitutional Violation There Is No Basis for Supervisory Liability.

Claims against the City of Huntington and the Huntington Police Department are premised on supervisory liability. The Court has found that officer Booth, the employee of these entities, committed no constitutional violations. Without such underlying violations there is no basis for supervisory liability. Summary Judgment must be granted to the city and to the department as well as to officer Booth.

### CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 100). The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 23, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE